United States v. Lasher, the first case on the calendar. Good morning and may it please the court. My name is Roger Stavis and I represent Lena Lasher, the appellant in this case. Ms. Lasher was a supervising pharmacist of two pharmacies which basically broke every rule and regulation in the book when it comes to pharmacies. And that's what the case was about and that's how it was tried. It was first and foremost your honors, a case... Was that me? No, it was a mistake Mr. Stavis. It was first and foremost... You can't manipulate the loudspeakers. It was first and foremost a case about misbranded prescription drugs. And the fraud that was three different counts of conspiracy, mail fraud, wire fraud was seemingly an afterthought. When I was preparing for this case, I went back into the record and I looked at what Judge Buchwald said when she sentenced Ms. Lasher and she went below the guidelines. The guidelines were elevated because of the fraud and Judge Buchwald said at page A125 of our appendix why she's giving this sentence. This is because I do not view the most serious aspects of the crime committed here from an economic perspective, but rather from a public health perspective and the failure of Ms. Lasher to conform her conduct to what she absolutely knew was her professional responsibility as a pharmacist. So there is an intent to defraud element to section 21 U.S.C. 333, the misbranding statute which makes it into a more serious felony than the regular misbranding which is a misdemeanor. And so there was that element, but a mail fraud requires not only a scheme to defraud, but money or property has to be the object of that fraud. The fraud statutes are not unlimited. They have their limitations. Your Honor and I were involved in the writing of it, me in the arguing of it, United States v. Binday setting the outer limits. When Judge Buckwald instructed the jury in this case with regard to the fraud case counts at page 1914 of the transcript, she required, quote, specific intent to deceive for the purpose of causing some financial or property loss to another. The jury was properly instructed. You're not contending the jury was not instructed as to that element? That's correct, but the element this is not an instruction. This is a legal sufficiency case. Yes, it is, Your Honor. But there was testimony that the recipients of the drugs didn't always get what they paid for. Well, Your Honor, there was part of the misbranding was the manner in which the pills were counted in each file. They weren't counted by a pill counter as they should have been. But part of it also was that the purchaser sometimes got I guess the correct word wouldn't be used pills, but pills that had been previously sent out to others and came back to the pharmacy and were then just dumped in a drawer and then sent out again without checking whether they had been adulterated or expired in their previous trip to the community. There was evidence of that, but the essence of things is that people went on the Internet to get it. I understand what you're saying is the essence of the crime. Of course, as you just pointed out, Judge Buchwald sentenced your client according to exactly what you just said was the essence of the crime. Correct. So with respect to the mail fraud, the issue is whether there was technically a mail fraud. It may not be the biggest or strongest case of fraud, but there's a witness who testifies, I wouldn't have signed up for this if I knew I was going to get used pills. So there's some evidence that the jury could have believed to support the view that the reported victims of the mail fraud did not get what they paid for, and this went to the essence of the bargain in at least one person's view. Now, that may not... If you were here saying and then Ms. Lesher gets sentenced according to guidelines that suggest that she defrauded all of these customers of the value of their money, well, why hasn't? But as you just told us, that's not what happened. Well, yes, Your Honor. You can look at this in two ways. You can look at it that these people wanted pills and they'd do it anyway as long as they get it cheap. You can look at it that way. And you can look at it another way, that they wanted pills, but they wanted pills prescribed by a doctor and fresh pills as wholesome as they could in a corner drugstore. And there was substantial evidence to support, I would think, either theory and in that way, don't we have to affirm, because there is people who are coming to this system because they can get cheap drugs prescribed by a doctor and a valid prescription and wholesome pills, fresh pills. Well, that's not the trial record in this case. There's only one person who ordered the pills, a person by the name of Amanda Walker. How much do you need? Excuse me, Your Honor? How much do you need? This is a system. It was systemic. That one witness illustrated a systemic approach. The witness's testimony was, as Judge Lynch stated, that she would not have ordered the pills if she knew X, Y, and Z. That gets into this court's jurisprudence and Shellef and other cases, a no-sale theory. Wait, wait, wait. The no-sale theory is the mere fact that the victim would not have purchased if she knew all the truth is not a doctrine that it's irrelevant that she wouldn't have bought. It proves that the defendant isn't guilty if she wouldn't have bought. It's a question of why she wouldn't have bought and whether that goes to the essence of the bargain. Yes, if the testimony is, she represented herself as a Harvard-educated pharmacist and I only buy from Yale-educated pharmacists, that would be a quirk of the purported victim. But here, she's saying I wouldn't have bought, not because I disapprove of people who have who are operating their pharmacies in effect as if they were drug dealers and I don't approve of that, so I wouldn't have bought, but it's I wouldn't have bought because I wouldn't have bought if I knew I might be getting stale pills or I knew that I might be getting fewer pills than I paid for. There was no, with regard to Ms. Walker and her testimony, there was no financial or property loss because it did not go to the essence. This was an internet pharmacy without physicians to receive precisely the essence of what Ms. Walker wanted. But why is that the essence? The essence was unadulterated pills, fresh pills. Well, with all due respect, the essence was I want and need my tramadol without a doctor because... The representation was that they would get original pills, not that they a specific representation that was made, Your Honor. That's not in the trial record. I disagree with the Court. That's an expectation of what a person, when a person goes to a pharmacy with a prescription in hand and hands it to the pharmacist, it is, you know, if I didn't get the exact drug that was prescribed or I didn't get the right number of pills or I got expired pills, I would be defrauded. The difference is, Your Honor, Ms. Walker didn't go into a pharmacy. She went into an internet pharmacy that she knew there was no physician and that there was a questionnaire and that it was bogus and that she got what she paid for. But she didn't know, well, she didn't know all those other things. I mean, well, and let me ask, so the whole essence of your argument is that your client is basically a drug dealer and not a mail frauder? I mean, this case really does go beyond a simple aspect of misbranding. This is putting out into the community controlled substances and addictive substances based on bogus prescriptions. This is rather more serious than just if they didn't send the right number of pills. There's a whole dimension to this that you're leaving out of account. I am not, Your Honor. The substances involved, which include Fioricet, Tramadol, and Soma, are not, N.O.T., want the record to be clear, not controlled substances, which is the essence of my 404B argument where the government said that she was not, quote, page 1769 on summation, she was nothing more than a drug dealer in a white coat. They transformed it into that with the testimony on the 404B of people coming from out of state buying OxyContin, which is a controlled substance but is not an issue. So, I got to give you just a couple more minutes then to address the 404B evidence because I understood from the briefs, and maybe I just missed something there, that the other crimes evidence was essentially about, the difference was it was in person and the people looked scruffy and came from out of state, which didn't seem to me to be in any respect more prejudicial than what was the primary fraud alleged. You're telling me that there was a different and more serious and more potent drug involved and the government capitalized on that in summation and said she's selling OxyContin? Yes. OxyContin is a controlled substance. The testimony, what use did the government make of that 404B evidence in summation that distinguishes that evidence from what was going on over the internet? Page 1769, the summation, quote, she is nothing more than a drug dealer in a white... Yeah, I think that's true. And I think that's true based on the fraud evidence. These are drugs that are regulated in such a way that they're supposed to be dispensed in a particular way. Yeah, sure. You were asking me about... I understand. These are controlled substances, opium tincture... And did the government say that in summation that these are... You just read me, she's a drug dealer in a white coat. I think they could have said that if those OxyContin people had never showed up. But they had, Your Honor, and the evidence was that they had and it was fought over. There was a motion in Limine. There were arguments over it. It's in the appendix. It changed the character of the entire case. Thank you. Thank you very much. You reserve some time for rebuttal. Mr. Richenthal. Good morning. May it please the Court. I'm Assistant United States Attorney Daniel Richenthal. I was one of the prosecutors representing the government for the District Court and I represent the government on appeal. I want to start with a brief correction. Although legally irrelevant, both Fioraset and Soma are in fact controlled substances. The case was not tried that way but it's not correct as a matter of law. Both of those substances are controlled. Let me make two other points in the order in which I think Your Honors were asking. And they're controlled meaning that not only would you need a prescription the way you might for, I don't know, cancer medication, but that has to be the triplicate form and all that sort of stuff. Yes, Your Honor. They fall within the Controlled Substances Act. Soma more recently than Fioraset and in fact there was pre-trial litigation about the controlled substance status of Fioraset but none of that was before the jury. I wanted to correct the legal point but it's actually not relevant to why we're here. Why we're here is because Ms. Lasher alleges that the jury could not have found her guilty of mail fraud, wire fraud, and conspiracy to commit those offenses. We respectfully submit the very debate Your Honors were having with my adversary proves why that jury verdict  and inferences were in front of the jury, which was properly instructed. There's no dispute about that. And the jury found, beyond a reasonable doubt, that those three counts were proven. And the evidence in front of them was not just sufficient, it was ample. Judge Lynch, you asked my adversary about the issue of I'm sorry, Your Honor? I think it was akin to what we put in our brief. It's as if Your Honor were to go to a car lot this afternoon that looked like it was selling new cars. It had all the signs and flags and indicia of a typically new car lot. Including, by the way, the manufacturer's label and all those things that one would see in a car dealership. Except secretly, before you showed up, they took a used car. What were the words that deceived? Well, Your Honor, as we point in our brief and it's also in our appendix, there were several websites here. We put two of them in our appendix and multiple were in front of the jury. They said, among other things, U.S. licensed physicians will issue your prescription, which will be filled by U.S. licensed pharmacists. In other words, this will be a normal prescription, albeit one sent through the mail. That presumes or implies that a doctor will look at this and prescribe appropriately and that's one flaw. It actually represents, in our judgment, multiple things. One, what you receive will have been blessed, essentially, by a doctor. Two, what you receive will be a normal prescription, albeit one through the mail. You'll get fresh pills to use one term. Two elements of deception. That's all you need. That's right. We only need one. And, in fact, there were multiple. There's the counting issue, which we haven't talked about. But even if one were to ignore the counting issue, there's this issue of returned pills. As Judge Buchwald put it, the people who paid for these pills certainly didn't think they were getting seconds that's used pills or returned pills. But there's also a third issue. That directly contradicts what you're saying. There's no evidence to support a deception. Well, that's correct, Your Honor. The websites make very clear... The money was taken because of this deception. That's all you need from mail. Absolutely. Although, I do want to point out there's actually another deception and I think it's important because the jury was entitled to rest its verdict on any or all of these. And that is, these vials, and the jury was presented with literally the vials themselves and testimony from undercover agents, among others. These vials looked like a normal pharmacy vial. They had normal labels. They had instructions from a doctor. They had the doctor's name. Except there was testimony that they were anything but that. The instructions, time and again, were not from the doctor. They were from Ms. Lasher, who was not a doctor. Tell us what was relevant in the 404 issue. What's relevant in the 404 issue, and let me pause for a second, this was only introduced after the defense opened on good faith. Defense counsel said good faith two dozen times maybe in his opening. He repeated it again in closing. He repeated it throughout the trial. So the sale of the people who obviously were looking for a fix indicates that there was a lack of good faith. I want to make a small point, which is it's not entirely clear everyone here was looking for a fix. These websites sold legitimate drugs, and there are actually a lot of websites out there. In fact, there was an expert at trial who testified that there are legitimate internet pharmacies. They're not all illegitimate. They're not all illegal. They don't all do this. So it's not at all clear that in fact everyone's looking for a fix. But even if I were to adopt, Your Honors... The people who came. The people who came in person. Well, this pharmacy had both legitimate customers, to use my word, and unfortunately illegitimate customers or addicts or people that were selling. What were you trying to bring out by showing scruffy looking people coming in and getting medication? Their scruffiness was not the point, Your Honor. The testimony here was that in say minute one, Ms. Lasher would instruct her employees to ignore obvious red flags of illegitimate prescriptions, of addict-seeking behavior, of false and misleading instructions. And in minute two, someone would walk off the street. That person would present some of the same exact red flags and others and she would instruct the same exact employees to ignore those red flags and fill those prescriptions too. The entire premise of the 404B evidence, and in our judgment it wasn't even the premise, was that this was one course of conduct. It was fill anything that looks like a prescription. ANYTHING that looks like a prescription, regardless of red flags, regardless of what it's for, regardless of what it looks like, as quickly as possible. To make as much money as possible. And this distinction between the internet addictive pain medications and the in-person addictive pain medications was not a distinction Ms. Lasher drew. It was not a distinction she permitted her employees to draw. The whole premise is that the idea that she operated in good faith is defeated in part by how she acted at every moment of the day, in person and over the internet. I understand that argument. Just to be clear though, you don't disagree that this is 404B evidence. That is when you say it was all part of the same course of conduct. That may or may not be so, or at least that's a jury argument as to what it shows about the defendant's conduct. But am I wrong that the indictment charged the, for want of a better word, internet scheme and that these in-person prescription abuses, if that's what they were, were not literally evidence of conduct in furtherance of what was charged in the indictment? Because I took it you were conceding this was 404B evidence and just saying it's proper 404B evidence. Respectfully, no. We didn't concede it before the district court. We don't concede it now. In our judgment this evidence was inextricably intertwined with the course of conduct at trial. Inextricably intertwined is also a slightly different argument. Does the indictment say she gave out misbranded prescriptions, period, or does it essentially describe the internet scheme? The indictment essentially describes the internet scheme, but, and this is important, the misbranding counts were elevated from misdemeanors for felonies based on an intent to defraud. As a matter of law, intent to defraud with respect to misbranding includes intent to defraud regulators. This evidence went directly to Ms. Lasher's mens rea when she made repeated material misstatements to multiple regulatory bodies. So even if this court were to assume arguendo that it's only 404B as to the  misbranding counts, it's direct evidence of her intention to lie to regulators which elevates from misdemeanor to felony all of those counts. Was there a request from the defense for a limiting instruction that highlighted that this was 404B evidence submitted for a limited purpose as to the mail fraud counts? Actually, Your Honor, there was one given that wasn't there. Judge Buchwald treated this as 404B, so regardless of whether it could have been admitted on some other theory, that's the theory it was admitted on. That's correct, and she did give a limiting instruction, and she actually gave a more cautious one than the one Your Honor just posited. She gave ones that applied throughout the entire case. You're saying that at least as to the misbranding counts, that was more than the defendant was entitled to. That's our belief. It's hard to imagine how evidence of lies to regulators could be anything but direct evidence of evidence to lies to regulators. The sentence collapses upon itself. But yes, Judge Buchwald gave a limiting instruction that was far more generous to the defense than we think warranted. We didn't object to that instruction, but the point of this discussion is that the idea that the customers were scruffy is utterly besides the point. It was one integrated course of conduct with the same employees, the same time frame, and in the same way. The defense makes this effort in their brief, and I heard it again this morning, that somehow what the government did is stood up and said, she distributed controlled substances and therefore you should convict her of fraud and misbranding. The government didn't say anything like that. The word controlled substance never left the government's mouth in summation or rebuttal for good reason. It had no bearing in this case. Drug dealer in a white coat was an apt description of her conduct for any number of reasons. The jury's verdict was amply supported, and this Court should affirm. Thank you. I want to address something that Judge Hellerstein said, or was an answer that Mr. Richenthal gave to you, Judge Hellerstein, which is the fraud was that this purported to be involving U.S. pharmacists and U.S. physicians. Those statements were accurate. Ms. Lasher happens to be a U.S. pharmacist. She actually had a doctorate in pharmacy, and there was a U.S. physician, Dr. John Burling, who testified for the government, who passed on all these things. Did he do it by rules? He didn't examine the people? He didn't do anything like that? But just to barely say that that's a fraud because those are untrue is incorrect on this record. But there was evidence, wasn't there, that the prescription instructions were not according to standard practice, and that the instructions often deviated from what an authorized physician would have prescribed in terms of amount and dosage over time. That was part of where the deception lay, that U.S. physicians were not, in fact, issuing the instructions and directions. That wasn't the claim that was just made. The claim that was just made was based on the Internet page. I did not take it that Mr. Richenthal was saying she represented that there was a U.S. pharmacist involved, and there wasn't. I think he was saying that those representations amount to an implicit representation that you're getting what you ought to get from a licensed professional doctor and pharmacist. Now, you might say that's wrong, but is it wrong as a matter of law that there's not an implicit representation there? Yes, Your Honor, because the key word that Your Honor uses is implicit, and I would say that it has to be explicit, and what the ultimate consumer who goes to the Internet pharmacy believes or thinks with regard to the mail fraud statute is not the relevant inquiry. It's what false statements were provided and relied upon. This doesn't go to the essence. The only one thing I want to correct in my— By the way, Mr. David, so suppose we agreed with you. What does your client get out of it? Gets a reversal of the most serious charges, which would leave her with the misbranding conviction, which we're asking for a new trial on the 404B and the various other grounds in the brief, which I won't go through those, but a retrial with a— Why would you get a retrial? Excuse me. I get a retrial— On the other— I'm just trying to isolate, and I know it doesn't really matter. I'm just trying to understand. There would be a resentencing, I suppose, inherently, but Judge Buchwald was clear as you started out your argument that the sentence was based on the misbranding and that she didn't take the mail fraud aspect of it very seriously. Yes, but I just want the Court to know that three years, which is the sentence that Ms. Lasher received, which we're challenging on different grounds, is the statutory maximum. I understand. Yes, Your Honor. So that's the reason we asked the Court to overturn the verdict, the sufficiency on that count and to grant a new trial. Thank you, Your Honor. Thank you both very much for an enlightening argument. We'll reserve decision.